

Ronald M. Daignault (RD2672)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

COLUMBIA PICTURES INDUSTRIES, INC.,
DISNEY ENTERPRISES, INC., PARAMOUNT
PICTURES CORPORATION, TRISTAR PICTURES,
INC., TWENTIETH CENTURY FOX FILM
CORPORATION, UNIVERSAL CITY STUDIOS
LLLP, UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP, and WARNER BROS.
ENTERTAINMENT INC.,

                                    Plaintiffs,

            v.

GARY FUNG and DOES 1 - 10,

                                    Defendants.

Civil Action No.:

COMPLAINT

---

## COMPLAINT

Plaintiffs Columbia Pictures Industries, Inc. ("Columbia"), Disney Enterprises, Inc.

("Disney"), Paramount Pictures Corporation ("Paramount"), TriStar Pictures, Inc. ("TriStar"),

Twentieth Century Fox Film Corporation ("Fox"), Universal City Studios LLLP ("Universal"),

Universal City Studios Productions LLLP ("Universal Productions"), and Warner Bros.

Entertainment Inc. ("Warner Bros.") hereby allege as follows:

## Nature Of The Case

1.      This is a case of willful and rampant infringement of copyright over the Internet. Defendants knowingly enable, encourage, induce and profit from massive online piracy – piracy Defendants could stop, but refuse to.

2.      Defendants operate websites and computer servers as part of an online computer network known as "BitTorrent."  Defendants do so to enable their users to locate and download infringing copies of Plaintiffs' valuable copyrighted motion pictures and television shows for free and without authorization.  Defendants operate their websites and servers with the express object of promoting their use to infringe Plaintiffs' copyrights.

3.      Defendants' users simultaneously distribute infringing copies of those same works to countless others around the world.  As a direct result of Defendants' conduct, thousands of the most popular motion pictures and television shows – from new releases that are still in theaters to blockbuster DVD releases to today's most popular television shows – are infringed every day.  Absent Defendants' active and ongoing participation in the daily acts of infringement, this widespread unauthorized copying and distribution of Plaintiffs' valuable property simply could not happen on the scale that it does.  The harm to Plaintiffs, who invest millions of dollars and enormous creative energies to produce their creative copyrighted works, is manifest and irreparable.

## Copyright Infringement and the BitTorrent Network

4.      BitTorrent is a peer-to-peer network optimized for the copying and distribution of large files.  On a "peer-to-peer" network, the actual exchange of the files – *i.e.*, the actual downloading and uploading – takes place directly between users (or "peers") of the network. Whether BitTorrent is used for legitimate purposes or copyright infringement is determined by those who operate its websites and its servers.  In this case, the Defendants operate BitTorrent

2

websites and servers with the object of enabling and fostering the illegal reproduction and distribution of copies of Plaintiffs' movies and television programs protected by copyright.

5.      Defendants set up, maintain, and operate computer servers and websites that, by design, foster widescale copyright infringement by users on the BitTorrent network. Simply put, the Defendants' websites and servers exist to entice and facilitate copyright infringement, and materially contribute to such infringement – enabling Internet users to quickly copy and transfer files, almost all of them infringing, many of them Plaintiffs' copyrighted movies and television programs. Defendants do so to profit unlawfully from the distribution of Plaintiffs' copyrighted movies and television programs.

6.      Downloading files using the BitTorrent network is straightforward. Users access the defendants' websites that list files – in this case movies and television programs – that are available for download. By clicking on the file name, an illegal copy of the movie or television program is automatically copied to a user's computer. That newly copied movie or television program is a perfect digital copy – ready to be viewed, burned to a portable media like a DVD, and/or copied by and distributed to another user.

7.      The BitTorrent network is made up of three principal components: (a) a BitTorrent "client" application, (b) indexing websites known as "torrent sites" and (c) computer servers known as BitTorrent "trackers." Each is necessary for the operation of the network.

8.      The BitTorrent network works as follows: users download a small program that they install on their computers – the BitTorrent "client" application. The BitTorrent client is the users' interface during the downloading process. There are many different versions of BitTorrent clients, all of which are readily available on the Internet for free. BitTorrent client

3

applications do not have the ability to search for files. To find files available for download, users must visit torrent sites using any standard Internet browser.

9.     A torrent site is a website that contains an index of files available on the network (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small files known as "torrents." Although torrents do not contain actual copies of the movie or television program, they automatically and invisibly instruct a user's computer where to go and how to get the desired file. Torrents interact with specific trackers, allowing the user to download the desired file.

10.    A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing a movie) with downloaders (those who are copying a movie). A tracker functions in many respects like a "traffic cop," directing a BitTorrent user's computer where to find users who have a particular file, and then providing the user's computer with access to those other users to facilitate the download process. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on a torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available in cyberspace.

11.    Both torrent sites and trackers play an integral role in the process of using BitTorrent to download files. Without them, users could not identify, locate or download infringing files. Indeed, the content available on the BitTorrent network is defined entirely by what files the operators of torrent sites and trackers – such as Defendants – choose to allow to be indexed and distributed. Defendants' sites enable, cause, materially contribute to, foster and induce widespread copyright infringement of Plaintiffs' works.

4

## The Parties

### *The Plaintiffs*

12.     Plaintiffs Columbia, Disney, Paramount, TriStar, Fox, Universal, Universal Productions, and Warner Bros. are among the leading motion picture studios in the world. Plaintiffs are responsible for creating and distributing some of the world's most popular filmed entertainment.

13.     Each of these Plaintiffs, including their affiliates and/or subsidiaries, owns the copyrights and/or exclusive reproduction and distribution rights to many popular motion pictures and television programs, including those listed on Exhibit A.

14.     Plaintiff Columbia is a Delaware corporation, with its principal place of business in California.

15.     Plaintiff Disney is a Delaware corporation, with its principal place of business in California.

16.     Plaintiff Paramount is a Delaware corporation, with its principal place of business in California.

17.     Plaintiff TriStar is a Delaware corporation, with its principal place of business in California.

18.     Plaintiff Fox is a Delaware corporation, with its principal place of business in California.

19.     Plaintiffs Universal and Universal Productions are Delaware limited liability limited partnerships, each with its principal place of business in California.

20.     Plaintiff Warner Bros. is a Delaware corporation, with its principal place of business in California.

5

*The Defendants*

21.     On information and belief, Defendant Gary Fung is a resident of Canada.
Defendants Does 1-10 are currently unknown to Plaintiffs.

22.     Defendant Gary Fung, together with the unknown Defendants Does 1-10, operates
two websites, www.isohunt.com (also known as verified-p2p-links.com) ("Isohunt"), at the
Internet Protocol address 69.64.61.30, and www.torrentbox.com ("Torrentbox"), at the Internet
Protocol address 69.44.155.28, by virtue of which Plaintiffs' copyrighted works are unlawfully
copied and distributed.[1]  Defendants also operate and have operated different BitTorrent trackers:
one previously associated with the Isohunt website, s2.isohunt.com, at the Internet Protocol
address 69.44.153.235, and one currently associated with the Torrentbox website,
tracker.torrentbox.com:2710/announce, at the Internet Protocol address 69.44.153.178.[2]
Together, Defendants' websites and trackers facilitate the copying and distribution of Plaintiffs'
copyrighted works.  Upon information and belief, Defendants have operated the Torrentbox
website and tracker (previously operated by another individual not named in this lawsuit) since
approximately April 2005.

23.     Defendants have in the past also operated a service known as "BTHub" in
connection with the Isohunt website that, as further described below, fosters and induces the
efficient exchange of Plaintiffs' copyrighted works.  In connection with this "BTHub" service,
Defendants modified torrent files available on the Isohunt website so that BitTorrent clients on

---

[1] The Isohunt website has also operated at other IP addresses.  As of mid-January 2005,
www.isohunt.com was located at the Internet Protocol address 69.44.155.163 and isohunt.com
was located at the Internet Protocol address 69.44.153.178. These addresses were subsequently
used for the servers hosting the BTHub service and the Torrentbox tracker, respectively.  In
April 2005, the Isohunt website was located at the Internet Protocol address 72.21.49.146.
[2] Tracker.torrentbox.com is also sometimes known as tracker2.torrentbox.com and
tracker3.torrentbox.com.

users' computers could identify, by connecting to Defendants' "BTHub" servers, the most efficient BitTorrent trackers to download files, including Plaintiffs' copyrighted works. On information and belief, Defendants continue to modify torrent files available on the Isohunt website so that BitTorrent clients on users' computers can identify more efficient BitTorrent trackers to download files, though this service no longer requires the use of the "BTHub" servers. The servers supporting this "BTHub" service have been located at the IP addresses 69.44.57.119, 69.44.153.235, and 69.44.155.163. On information and belief, all of the Defendants participate in and profit from the activities alleged herein.

### Jurisdiction And Venue

24.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore the Court has jurisdiction under 17 U.S.C. § 101 *et seq.*; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

25.     Personal jurisdiction over the Defendants is proper. Defendants have chosen to direct their infringing activities throughout the United States, and towards New York in particular. On information and belief, the Defendants have contracted with various internet service providers located throughout the United States to host in the websites and servers that enable infringement of Plaintiffs' copyrights. Once Defendants enable users, including New York residents, to access torrent files, the users' computers continuously interact with Defendants' websites, BitTorrent trackers, and servers running the BTHub service located in the United States to download infringing copies of Plaintiffs' works, as explained herein. In fact, the voluminous acts of direct infringement for which Defendants are liable require a high level of interaction between users' computers and Defendants' computer servers. On information and belief, many of these acts of direct infringement occur in the state of New York, where New

York residents access Defendants' websites and trackers in order to download infringing copies of Plaintiffs' works, including the works listed in Exhibit A to the Complaint. Further, on information and belief, Defendants have chosen to enter into contracts with advertising companies located in the United States, as well as PayPal, Inc., a United States company, in order to reap the financial rewards that Defendants have accrued from operating their torrent sites and trackers to distribute Plaintiffs' copyrighted works to users, including New York residents. On information and belief, some of these financial rewards accrue from direct payments from users, including New York residents. In these and other ways, Defendants have continuous contact with the State of New York and its residents. Finally, jurisdiction may be proper over the Doe Defendants because they may be found in New York.

26.     Venue in this District is proper under 28 U.S.C. § 1391(b), § 1391(d), and/or § 1400(a). Defendant Fung is a resident of Canada and therefore may be sued in this District, and a substantial part of the acts of infringement complained of herein occurred in this District. Further, it is possible that the Doe Defendants or their agents may be found in this District.

## Facts Common to All Causes of Action

27.     Defendants operate at least two torrent sites, Isohunt and Torrentbox, and related trackers. In doing so, the Defendants provide a material – indeed, an essential – contribution to the infringement of Plaintiffs' copyrighted movies and television programs. Furthermore, Defendants operate these websites and trackers with the object of enticing others to infringe Plaintiffs' copyrights. The specific functions performed by torrent sites and trackers are largely invisible to users. From a user's perspective, once the user clicks on the torrent file, the desired movie or television program begins to download (*i.e.*, be reproduced) onto the user's computer – automatically and without any further action by the user.

8

28.    Defendants also have operated a service known as "BTHub" in connection with the Isohunt website. This service increased the efficiency and reliability of successfully downloading Plaintiffs' copyrighted content when users selected torrents from the Isohunt website. To operate the BTHub system, Defendants first obtained uploaded torrent files – often corresponding to copyrighted movies and television programs – and then modified the program code of the torrent files in a particular way and made those torrent files available on the Isohunt website. Defendants modified the torrents so that if the primary tracker used to distribute the copyrighted file was not functioning, the user's computer instead contacted a BTHub server, which determined, and redirected the user's computer to, a more reliable tracker in order to facilitate downloading of the desired movie or television program. The result was that a user who clicked on a torrent file corresponding to a motion picture or television program on the Isohunt website was more likely to get a complete download of the movie or television show than if the BTHub server was not operational. This process required Defendants knowingly to modify and make available torrent files that obviously corresponded to Plaintiffs' copyrighted works – all the for the purpose of making it easier to download those copyrighted works.

29.    The blatant infringements made possible by using Defendants' torrent sites and trackers are obvious – and are well-known to and encouraged by Defendants. Anyone who visits Defendants' torrent sites, including Defendants themselves, can immediately observe the catalog of infringing files being indexed. Popular movies and television shows such as "Wedding Crashers," "The Incredibles," and "The Legend of Zorro" are clearly offered for download. In the past, Defendant Fung himself has posted specific references to infringing content on the Isohunt torrent site, including but not limited to an October 2004 post discussing a search for episodes of the copyrighted television program "Smallville." Defendants have also instructed

9

users how to use a "Search History Manager," a site feature that allows users to keep track of downloaded torrents, using as an illustration a torrent of the copyrighted motion picture "Shark Tale."

30.    Further, the Isohunt home page itself has in the past displayed "Box Office Movies," listing twenty movies at a time, the vast majority of which were still in theaters, all of which are obviously protected by copyright.  A user clicking on one these movie links was taken to a web page described as "Posted by isoHunt Bot."  Each movie's web page – set up by Defendants – included descriptions and often images from the movie, in addition to torrents for the movie available for download.

31.    Likewise, the Torrentbox torrent site currently includes the "Top 20 Most Active Torrents," "Top 20 Most Downloaded Torrents," and "Top 20 Best Seeded Torrents," all of which list overwhelmingly infringing content.  Defendants also categorize "Movie" torrents on the Torrentbox website by genre, including "Action," "Adventure," "Animation," "Comedy," "Drama," "Documentary," "DVD-R," Horror," and "Sci-fi."  Defendants also can view, in real-time, a list of all the files their Isohunt and Torrentbox trackers are helping to distribute, and can immediately see that they are overwhelmingly infringing.  In these and many other ways, Defendants know that their torrent sites and trackers are causing and/or materially contributing to infringing conduct, and Defendants themselves are inducing such conduct.

32.    Defendants exercise control over the infringing activity on their torrent sites and trackers.  Defendants decide exactly what torrents are indexed on their site and what files their tracker helps to distribute.  For example, Defendants have explicitly stated on the Isohunt torrent site that they will delete torrents containing pornographic content.  Further, Defendants have in the past implemented filtering of searches and torrent postings of certain copyrighted content,

including Microsoft content. The fact is that Defendants easily could prevent infringement of Plaintiffs' copyrighted works by not indexing torrent files corresponding to Plaintiffs' copyrighted works and by not tracking Plaintiffs' copyrighted works – yet they refuse to do so. Likewise, Defendants can readily have determined which of the torrents modified and distributed as part of their BTHub service corresponded to Plaintiffs' copyrighted works, and they could readily have chosen not to distribute those torrents or facilitate the tracking of those copyrighted works using the BTHub servers. Finally, Defendants also have the ability to decide which users can access their torrent sites and tracker, including the right and ability to exclude or ban specific users, such as by not allowing users with particular login names to upload or download torrent files.

33.    Defendants have failed to make genuine or bona fide attempts to filter out infringing content, even when notified by Plaintiffs of its existence.   Plaintiffs have provided the operators of the Isohunt website with numerous specific demands to remove torrents corresponding to infringing content, block searches of the content, and cease tracking such content. Defendants have repeatedly refused these requests. For example, in late July 2005, Plaintiff Fox sent multiple cease-and-desist letters to demand that the operators of Isohunt remove torrents corresponding to an *unreleased* movie, "Family Guy Presents Stewie Griffin: The Untold Story," as well as episodes of the television series "Family Guy," and to cease making available such content using any tracker. Defendant Fung refused this request. When Plaintiff Fox provided particular torrent files to remove, Defendant Fung removed only those files, but did not remove or filter out all torrent files related to the copyrighted work "Family Guy." This is just one example of Defendants' purposeful refusal to stop the widespread infringement using their websites and trackers.

11

34.    Defendants profit from the infringement they encourage and make possible via their websites and trackers.  In particular, Defendants sell advertising that they display on both the Isohunt and Torrentbox websites.  In fact, Defendants appeal to potential advertisers on the Isohunt website by highlighting the availability and draw of copyrighted content on the site. Bragging about the site's "visitor loyalty" and high rate of visitors that bookmark the site, Defendants emphasize the site's "quality service" – in other words, the offering of copyrighted content on the site.  Further, Defendants offer to provide advertisers with "keyword targetted [sic] advertising that matches what you want to sell or promote," using as an example, "selling Matrix sunglasses directly to people searching for 'matrix reloaded.'"  Thus, Defendants have specifically used the draw of Plaintiffs' copyrighted works to attract advertisers and to turn a profit.  Moreover, both the Isohunt and Torrentbox websites seek donations directly from users. For Defendants, the value of their site and the financial benefits they receive are directly dependent upon the number of users attracted to their site – the more users, the greater the financial benefit.  Plaintiffs' popular movies and television shows are the draw that attracts users to their site.  Not only do Defendants profit from the widespread infringement that they facilitate, but that is the essential business model on which their venture is premised.

35.    As demonstrated in paragraphs 27-34 above, Defendants clearly seek to induce copyright infringement of Plaintiffs' works, and operate their websites and trackers with the object of promoting their use to infringe copyright.  The evidence of inducement is flagrant and voluminous and includes, but is not limited to, postings by the site operators discussing and encouraging the downloading of copyrighted content, displays of images of infringing content on the site, an admission that Defendants' advertising revenue is tied to the draw of copyrighted content on the site, a refusal to filter infringing content, and the intentional modification of

torrent files obviously corresponding to infringing content to make it more likely that the torrents

can be used to successfully download infringing works.  Ultimately, even a single look at

Defendants' website reveals that Defendants' websites and trackers exist for the purpose of

trafficking in infringing content.

## First and Only Count

### (Copyright Infringement)

36.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through

35 as if fully set forth herein.

37.     Motion pictures and television programs owned by Plaintiffs have been and

continue to be illegally reproduced and distributed, without authorization, using Defendants'

torrent sites, trackers, and BTHub service.  Plaintiffs own the copyrights, or the exclusive

reproduction and distribution rights, in the copyrighted works listed on Exhibit A, all of which

have been infringed with Defendants' websites.

38.     Defendants are liable under the Copyright Act for inducing the infringing acts of

the users of their torrent sites, trackers, and BTHub service.  Defendants operate and maintain

their torrent sites, trackers, and BTHub service with the object of promoting their use to infringe

Plaintiffs' copyrighted motion picture and television programs.  Defendants' inducement of

copyright infringement is apparent from, among other things, the overwhelming infringing

content available on Defendants' torrent sites, trackers, and BTHub service, Defendants'

statements promoting copyright infringement, Defendants' explicit attempt to gain advertising

revenue based on infringing activity, and Defendants' refusal to remove copyrighted works from

their torrent sites, trackers, and BTHub service, despite notice from Plaintiffs of the existence of

the infringing content.  Through their creation, maintenance, and operation of their torrent sites,

trackers, and BTHub service, Defendants knowingly induce the unauthorized reproduction and

13

distribution of copyrighted motion pictures and television programs, including those listed on Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

39.    Defendants are liable as contributory copyright infringers for the infringing acts of users of their torrent sites, trackers, and BTHub service. Defendants have actual and constructive knowledge of the infringing activity that occurs on their torrent sites, trackers, and BTHub service. Indeed, Defendants' system is used predominantly and overwhelmingly to infringe Plaintiffs' copyrights. Through their creation, maintenance, and operation of their torrent sites, trackers, and BTHub service, Defendants knowingly cause, and/or otherwise materially contribute to the unauthorized reproduction and distribution of motion pictures and television programs, including those listed on Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

40.    Defendants are vicariously liable for the infringing acts of users of their torrent sites, trackers, and BTHub service. Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their torrent sites, trackers, and BTHub service, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights. Defendants have refused to take any action to prevent the widespread infringement by their users. Defendants receive a direct financial benefit attributable to the infringement by users of their torrent sites, trackers, and BTHub service. Defendants are therefore vicariously liable for the unauthorized reproduction and distribution of motion pictures and television programs, including those listed on Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

41.    The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Plaintiffs' rights.

42.    As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

43.    Alternatively, Plaintiffs are entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

44.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

45.    Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of their copyrights and exclusive rights under copyright.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For a preliminary and permanent injunction enjoining Defendants and their respective agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with each or any of them, from:

(i) aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the unauthorized reproduction, downloading, uploading, and/or distribution

15

of copies of Plaintiffs' copyrighted works, whether using Defendants' torrent sites or trackers or BTHub service or by any other means; and

        (ii) downloading, uploading, and/or otherwise reproducing or distributing Plaintiffs' copyrighted works, whether using the BitTorrent network or by any other means.

        B.  For all damages to which Plaintiffs may be entitled, including Defendants' profits, in such amounts as may be found.  Alternatively, at Plaintiffs' election, for statutory damages in the maximum amount allowed by law.

        C.  For prejudgment interest according to law.

        D.  For Plaintiffs' attorneys' fees, and full costs and disbursements in this action.

        E.  For such other and further relief as the Court may deem proper and just.

Dated this 23rd day of February, 2006

                Respectfully submitted,


                _____
                Ronald M. Daignault (RD2672)
                JENNER & BLOCK LLP
                919 Third Avenue, 37th Floor
                New York, NY 10022
                Tel: (212) 891-1600
                Fax: (212) 891-1699
                *Attorneys for Plaintiffs*


                Katherine A. Fallow
                JENNER & BLOCK LLP
                601 Thirteenth Street, N.W.
                Suite 1200 South
                Washington, D.C.  20005
                Phone:   (202) 639-6000
                Fax:       (202) 639-6066
                *Of Counsel*

**EXHIBIT A**

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|
| 21 Grams | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA1-205-915 | 03/01/2004 |
| 28 Days | Columbia Pictures Industries, Inc. | PA 986-137 | 05/08/2000 |
| 50 First Dates | Columbia Pictures Industries, Inc. | PA1-202-550 | 02/19/2004 |
| 8 Mile | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA1-138-089 | 08/04/2003 |
| Adam Sandler's Eight Crazy Nights | Columbia Pictures Industries, Inc. | PA1-060-735 | 01/02/2003 |
| Alien vs. Predator | Twentieth Century Fox Film Corporation | PA 1-220-615 | 08/11/2004 |
| As Good As It Gets | TriStar Pictures, Inc. | PA 870-530 | 01/28/1998 |
| Cable Guy, The | Columbia Pictures Industries, Inc. | PA 799-999 | 07/09/1996 |
| City of Angels | Warner Bros. Entertainment Inc. | PA 879-603 | 04/24/1998 |
| Daredevil | Twentieth Century Fox Film Corporation | PA1-118-438 | 04/04/2003 |
| Day After Tomorrow, The | Twentieth Century Fox Film Corporation | PA 1-217-363 | 05/19/2004 |
| Forgotten, The | Columbia Pictures Industries, Inc. | PA 1-233-967 | 09/23/2004 |
| Friends - Episode 9-04: The One With the Sharks | Warner Bros. Entertainment Inc. | PA-1-097-337 | 11/15/2002 |
| Friends - Episode 9-10: The One With Christmas in Tulsa | Warner Bros. Entertainment Inc. | PA1 110-494 | 12/30/2002 |
| Friends - Episode 9-17: The One With the Memorial Service | Warner Bros. Entertainment Inc. | PA-1-198-853 | 05/13/2003 |
| Friends - Episode 9-18: The One With the Lottery | Warner Bros. Entertainment Inc. | PA-1-198-849 | 05/13/2003 |
| Hot Chick, The | Disney Enterprises, Inc. | PA 1-107-915 | 12/28/2003 |
| I, Robot | Twentieth Century Fox Film Corporation | PA 1-226-854 | 07/09/2004 |
| Midnight Express | Columbia Pictures Industries, Inc. | PA 17-504 | 11/06/1978 |
| Napoleon Dynamite | Columbia Pictures Industries, Inc. | PA 1-222-516 | 06/15/2004 |
| Patch Adams | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA 915-437 | 12/16/1998 |

EXHIBIT A (continued)

| TITLE | PLAINTIFF | COPYRIGHT | DATE |
|---|---|---|---|
| Signs | Disney Enterprises, Inc. | PA 847-049 | 09/12/2002 |
| Stuck on You | Twentieth Century Fox Film Corporation | PA1-188-411 | 12/15/2003 |
| Unforgiven | Warner Bros. Entertainment Inc. | PA 588-504 | 10/30/1992 |
| A Sound of Thunder | Warner Bros. Entertainment Inc. | PA 1-267-239 | 10/21/2005 |
| Bewitched | Columbia Pictures Industries, Inc. | PA 1-271-563 | 06/24/2005 |
| Dominion: Prequel to the Exorcist | Warner Bros. Entertainment Inc. | PA 1-267-505 | 12/30/2005 |
| Dude, Where's My Car | Twentieth Century Fox Film Corporation | PA 1-004-567 | 12/14/2000 |
| Elektra | Twentieth Century Fox Film Corporation | PA 1-253-621 | 01/13/2005 |
| Back to the Future | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA 266-708 | 10/15/1985 |
| The Blues Brothers | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA 73-796 | 07/15/1980 |
| Gone in 60 Seconds | Disney Enterprises, Inc. | PA 933-893 | 06/28/2000 |
| The Italian Job | Paramount Pictures Corporation | PA 1-226-857 | 07/17/2003 |
| The Ladykillers | Disney Enterprises, Inc. | PA 1-213-829 | 05/7/2004 |
| Meet the Fockers | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA 1-255-623 | 05/25/2005 |
| National Treasure | Disney Enterprises, Inc. | PA 1-250-540 | 01/4/2005 |
| Team America:  World Police | Paramount Pictures Corporation | PA 1-235-613 | 10/29/2004 |
| The 40 Year Old Virgin | Universal City Studios LLLP / Universal City Studios Productions LLLP | PENDING | PENDING |
| The Incredibles | Disney Enterprises, Inc. | PA 1-250-536 | 12/29/2004 |
| The Longest Yard | Paramount Pictures Corporation | PA1-271-517 | 05/27/2005 |
| Coach Carter | Paramount Pictures Corporation | PA 1-256-832 | 01/24/2005 |
| The Mummy Returns | Universal City Studios LLLP / Universal City Studios Productions LLLP | PA1-033-456 | 05/4/2001 |

2